**HARTFORD CHARGA-PLATE ASSOCIATES, Inc. v. YOUTH CENTRE-CINDERELLA STORES, Inc.**

Civ. No. 4447.

United States District Court, D. Connecticut.

Oct. 24, 1953.

Solomon Elsner, Aaron Nassau, Michael Sudarsky, Hartford, Conn., for plaintiff.

M. J. Blumenfeld, Hartford, Conn., for defendant.

SMITH, District Judge.

This is an unfair competition case brought in the Superior Court for Hartford County and removed to this Court on the ground of diversity of citizenship. In it plaintiff seeks to restrain defendant from continuing to use in its addressing machines identification plates issued by plaintiff to customers of its six member stores. The parties have agreed that the hearing on preliminary injunction might be considered as on the application for

permanent injunction, and the damage claim is not pressed.

There is little dispute on the facts except as to the extent and good faith of defendant's efforts to prevent the use of the plates issued by the plaintiff and as to the extent, if any, to which the defendant relied on the plates as credit information.

The first of these disputes must be resolved against the defendant. It was obviously encouraging the use of the plates in question by its employees despite its tongue in cheek instructions to the contrary.

As to the second dispute, however, the evidence is insufficient for a finding. We may speculate that the mere fact that possession of a plate, showing that a customer then enjoyed or at some time in the past had enjoyed credit standing in one of plaintiff's member stores, might be accepted as sufficient for defendant to extend credit without more, and that thereby the defendant appropriated to itself the benefit of the credit rating efforts of plaintiff's members. In view of the small size of the purchases described in the evidence, and the testimony of defendant's witnesses as to the extent of discretion in the clerks, however, the court does not find the credit use established.

In the use of the plates issued by plaintiff, in machines purchased by defendant for use in its Hartford store with the intent that those plates would be used therein, the defendant was, for its convenience and that of its customers, utilizing the product of plaintiff's expenditure of time and money. To that extent it was taking a "free ride".

There can be no doubt that use of the plaintiff's, or a similar plate avoids delay to the customer, losses to the store from inaccuracy in addressing and billing, and saves valuable clerical time to the store.

The same savings could, of course, be obtained if defendant furnished its own plates. This, however, would cost money, and while a shopper's pocketbook might easily carry two, or a large number of plates, delay would be caused in searching out the correct one among the contents of such receptacles, and much of the saving of time would be dissipated.

It may be true also, although it is doubtful whether it can be found from the evidence, that a certain amount of prestige attaches to membership in plaintiff's group, comprising among its six members five of the largest department stores in the area and a men's clothing store, plaintiff having pioneered in the shopping area in providing the convenience of a plate system.

Defendant was willing and eager to join plaintiff and share its costs, but was turned down, as was Lord and Taylor.

When refused admission to the plaintiff group, defendant, rather than make a serious attempt to provide its customers plates notched for machines it should use, obtained machines with the pins removed which would take plates furnished by plaintiff no matter how they were notched.

Can it be held that defendant's actions amount to actionable unfair competition?

There is no direct palming off of defendant's goods as those of plaintiff or for that matter of plaintiff's member firms.

The usual basis for the traditional unfair competition sanctions, therefore, does not exist. Nor does the case fall squarely within those extensions of the doctrine on which plaintiff relies, illustrated by the I.N.S. and the phonographic record cases. International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211; Capitol Records, Inc. v. Mercury Record Corp., D.C., 109 F.Supp. 330.

Admittedly the material on the plaintiff's plates is not copyrighted. Nor is it news subject to pirating or the result of artistic creativeness.

Plaintiff's two main reliances are on a theory that defendant is invading a property right in the plates or that defendant is causing plaintiff's members'

customers to breach a contract to use the plates solely in the members' stores.

The plates however were generally distributed under such conditions that the customer is unlikely to be aware of any claim of continued ownership in plaintiff, and it may be doubted if even the recent attempted reservation of title would be effective against the customer for whose use and possession the plates were furnished.

It is even harder to spell out a contract agreed to by the customer not to use the plates except in member stores.

■ In any case, neither the claimed property right nor the claimed contract seems a sufficient basis for extension of the doctrine of unfair competition by imposing the sanctions of the courts to prevent the use of the identification tokens or plates, for the general purpose for which they were furnished the customer, in stores other than those sharing the burden of furnishing them.

■ Restrictions on the use of ideas and devices beneficial to the public should not be favored where no substantial harm is shown to the plaintiff, but only some incidental benefit to defendant, where there results no palming off or confusion of goods.

The application for temporary and permanent injunction is denied. Judgment may be entered for the defendant, dismissing the action.